THOMAS WILSON ET UX. *v.* WILLIAM SCOTT ET AL.

1. Where a man executes a mortgage and afterward marries and becomes the head of a family, a family homestead in the mortgaged property is subject to the mortgage, and in an action against the mortgagor to foreclose such mortgage, his wife is not a necessary party.

2. Where a defect in the description of lands sold at a judicial sale did not affect the price for which the same were sold, the judgment debtor can not resist a confirmation of the sale on the ground that the purchaser does not acquire a valid title.

3. On petition in error to reverse an order of court confirming a sale on execution, it can not be assigned for error that the court's findings of fact were contrary to the evidence. The return of the sheriff making the sale is *prima facie* evidence of the amount and nature of the appraisement; and the copy of the appraisement deposited with the clerk can not be considered by the reviewing court unless embodied in a bill of exceptions.

4. Where notice of the time and place of sale by a sheriff is advertised for thirty days before the day of sale, in a weekly. newspaper, it is no objection that the first number containing the notice was printed and published in advance of the day of the week on which the publication was usually made.

MOTION for leave to file a petition in error to the District Court of Highland county.

Thomas Wilson, mortgagor, and Mary, his wife, claimant of a homestead in the mortgaged premises, complain of William Scott, mortgagee, and William Clyburn, purchaser at foreclosure sale, that there was error in the confirmation of the sale, and in overruling their motions to set it aside.

The mortgage was executed by Wilson in 1864, previous to his marriage with Mary, in 1867. The sale of the mortgaged premises to pay the mortgage debt, $3,709.15, was decreed in the court below, in 1875, in an action by the mortgagee against the mortgagor, and the sale was made by the sheriff of the county, on the 31st of December following. The order of appraisement and sale was returned by the sheriff with an indorsement showing that the premises had been duly appraised, on the 29th of November preceding the sale, at $7,200, and were sold to Clyburn for $4,816, being more than two-thirds of the appraised value.

Notice of the sale, wherein it is stated that the premises were appraised at $45 per acre, was advertised in the Highland Gazette, a weekly newspaper printed and of general circulation in the county. The usual publication day of this newspaper was Thursday of each week, but the edition which contained the first publication of this notice was printed, circulated, and mailed to subscribers on Wednesday, the 1st day of December, 1875, although it did not reach subscribers in the immediate vicinity of the mortgaged premises, by mail, until the 2d of the month.

On the day of sale, the wife of the mortgagor, on behalf of herself and family, made demand that a homestead in the

mortgaged premises should be set off, which demand the sheriff refused.

In the mortgage, and all subsequent proceedings, the premises were described by metes and bounds, and as containing 160 acres, more or less. Several of the courses and distances, however, were omitted.

On the hearing of the motion to set aside the sale, testimony was offered tending to prove that the mortgaged premises in fact contained 183½ acres.

All the foregoing facts are set forth in a bill of exceptions. It also appears from a certificate of the clerk of the court that, on the 29th day of November, 1875, there was filed in his office a copy of a land appraisal, which reads as follows:

" *William Scott* v. *Thomas Wilson.* In obedience to the order of the court in the above case, and on call of the sheriff of Highland county, after being first duly sworn to appraise the real estate in said order described, we make return and say, upon actual view of the premises, forthwith after such view, that the premises mentioned and described in said order are of the real value in money at $45 per acre. Given under our hands and seals, this 29th day of November, A. D. 1875.

" JOHN RUSSELL,     [SEAL.]
" JOHN L. REDKEY,  [SEAL.]
" WILLIAM UPP."    [SEAL.]

With a certificate from the sheriff that said appraisers had been duly sworn by him.

*James H. Thompson,* for the motion.
*A. G. Mathews & H. M. Huggins* and *Ulric Sloan,* contra.

McILVAINE, J. Objections on behalf of the plaintiffs in error are urged against the confirmation of the sale below, as follows:

1. That the wife of the mortgagor was a necessary party to the action below, before the decree of sale could be made, and that she was entitled to a homestead in the mortgaged property.

2. That the sale was invalid, by reason of uncertainty in the description of the property.

3. That the property was not sold for two-thirds of its appraised value.

4. That notice of the time and place of sale was not advertised for the full period of thirty days before the day of sale.

Of these in their order :

1. The wife of the mortgagor was not a party to the mortgage; therefore, she was not a necessary or a proper party to a suit for its foreclosure. The mortgage having been executed before the intermarriage of the plaintiffs in error, was as effectual to defeat a right to a homestead in the mortgaged estate as if, after the marriage, it had been executed by the husband and wife. The only interest which the husband had in the property at any time after he became the head of a family was a mere equity of redemption, and therefore the right to a homestead in the mortgaged premises, either upon his own demand or on that of his wife, was subject to the mortgage.

2. There is no pretense that the supposed defect in the description of the land at all affected the price for which the property was sold. This being so, the validity of the purchaser's title was a matter of his own concern. Neither the judgment debtor, nor his wife as claimant of a homestead in the property, could be prejudiced by any defect in the purchaser's title. The purchaser being content with the title, the plaintiffs in error had no interest in defeating the confirmation on this ground.

3. The return of the sheriff upon the order to appraise and sell shows that the premises were sold for more than two-thirds of the appraised value. Upon the record before us, we think the question must be determined by that return ; because : 1. The certificate of appraisement as made by the appraisers was not embodied in the bill of exceptions, so that we have no evidence before us that the valuation was forty-five dollars per acre, instead of $7,200 for the whole tract, as returned by the sheriff. The copy of

the return of the estimate of value deposited with the clerk, as required by section 433 of the civil code, is not a part of the record of the case. It is true the sheriff's return refers to a certificate of valuation by appraisers as on file in the clerk's office; but such reference does not make such certificate a part of the bill of exceptions, nor does it so identify the certificate produced by the clerk as to authorize this court to consider it for the purpose of disproving the truth of the sheriff's return as to the amount of the appraisement. If this return be false, the parties prejudiced may have a remedy against the sheriff; but they can not in this proceeding in error dispute the return by any paper not made a part of the record. Nor is the statement in the notice of sale (which is in the record), that the land was appraised at forty-five dollars per acre overcome by the return, which shows that the tract, as a whole, was appraised at $7,200. In the first place, this statement in the notice was superfluous, and in the second place the estimated quantity—one hundred and sixty acres—multiplied by forty-five dollars, give the $7,200, which is the gross appraisement as certified by the sheriff in his return. We are not satisfied that the return was false. 2. If it were shown by the record that the only valuation was per acre at forty-five dollars, then the alleged fact that the number of acres exceeded one hundred and sixty, should have been found by the court, so that a mere question of law would have been brought under review in proceedings in error. Whether the court believed the testimony offered, tending to prove that the tract contained one hundred and eighty-three and one-half acres, we can not know from this record. The fact that there was no conflicting testimony on this point is not enough. Many circumstances that could not be placed on the record may have discredited the witness. Indeed, we may say that the testimony of the surveyor, considered in connection with the plat of his survey, which appears in the bill of exceptions, is not satisfactory to our minds. This is not a case in which a reviewing court may reverse on the ground that an issue of fact was decided by

Wilson et ux. *v.* Scott et al.

the court below contrary to the weight of evidence. In the absence of a finding to the contrary, we must assume that the court below, upon the testimony, did not find that the number of acres contained in the tract exceeded one hundred and sixty—to wit, the quantity estimated by the parties to the mortgage, and adopted by the court in its decree of sale.

We do not wish, however, to be understood as approving, implicitly or otherwise, the practice of selling land for a gross sum, where the only valuation of the appraisers is by the acre, and the quantity named in the writ is merely estimated. The better practice in such case, unquestionably, would be to make the sale upon the same basis that the appraisement is made. In such case the estimated quantity is *prima facie* correct, but any person interested should be allowed to show a mistake in the estimation; and if it turns out that the sale was for a less sum than two-thirds of the real appraisement, the sale should be set aside.

4. The law regulating sales upon execution governs this case. By section 436 of the civil code, it is provided that notice of the time and place of sale on execution shall be given "for at least thirty days before the day of sale, by advertisement in some newspaper printed and of general circulation in the county," etc. "Where such advertisement is made in a newspaper published weekly, it shall be sufficient to insert the same in five consecutive numbers thereof." When published in a daily paper, it is sufficient to insert it in the paper once a week for five consecutive weeks, but in such case it must appear on the same day in each week. The requirement that the insertion must be on the same day of each week relates only to cases of publication in a daily newspaper. Although weekly newspapers are usually published on the same day of the week, there is no law requiring that it must be so. Hence, where the advertisement is make in a weekly paper, it is not essential that it appear in numbers published on the same

day of each week.   It is sufficient if it be published in each number for five consecutive weeks, provided the first number be published for at least thirty days before the day of sale.   In this count, the day of publication may be included, but the day of sale must be excluded.

In the case before us, the first number in which the notice was inserted was published on the 1st day of December, and the sale took place on the 31st of the month. We are of opinion, therefore, that the period of advertisement was sufficient, notwithstanding the first number of the weekly newspaper in which it appeared was published one day in advance of the usual day of publication.

*Motion overruled.*